774 A.2d 741

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Borgela PHILISTIN a/k/a Bortela Philistin, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 30, 2001.

Decided July 16, 2001.

Nigro, J., concurred and filed opinion.

Jay Samuel Gottlieb, for Borgela Philistin.

William George Young, Catherine Marshall, Philadelphia, and Robert A. Graci, Harrisburg, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

## *OPINION OF THE COURT*

FLAHERTY, Chief Justice.

In 1995, in a trial by jury in the Court of Common Pleas of Philadelphia County, the appellant, Borgela Philistin a/k/a Bortela Philisten, was convicted of murder of the first degree, aggravated assault, possession with intent to deliver a controlled substance, and possession of an instrument of crime. In connection with the murder conviction, a sentencing hearing was held, as required by 42 Pa.C.S. § 9711, and appellant was sentenced to death. Terms of imprisonment were imposed for the other offenses. The present direct appeal ensued. We affirm.

On June 16, 1993, in the City of Philadelphia, two police officers made a routine traffic stop of a vehicle in which appellant was a passenger. When the officers approached the vehicle, appellant emerged, grabbed one of the officers' guns, and began shooting. Appellant shot one officer in the head and abdomen, causing his death. He shot the other officer in the head and back, rendering him a paraplegic. At the time of this incident, appellant was acting as a drug courier and was transporting cocaine in the vehicle.

■ As is our duty in cases where a sentence of death has been imposed, see *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we have reviewed the sufficiency of the evidence. The evidence was more than sufficient to sustain appellant's conviction.

Evidence introduced at trial included appellant's fingerprints on the gun used in the shooting and a statement given by appellant to police admitting that he was present at the crime scene and that he fired the gun. The statement contained an admission that appellant was in the process of delivering cocaine at the time of the incident. Gunpowder residue was found on appellant's right hand. Blood on appellant's clothing was of the same type as that of the wounded officers. In addition, various eyewitnesses testified to appellant's presence at the crime scene. Police arrived just a moment after the shooting. They saw appellant and told him to stop, but appellant fled. Police pursued and apprehended him, and found a bag of cocaine near the point of his arrest.

■ Appellant's first contention is that the sentencing court erred by denying his post-trial claim relating to the racial makeup of the jury. Asserting that there might have been an improper exclusion of jury members based on their race, and citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), appellant complains that he has been unable to obtain the jury selection questionnaires. He asserts that the questionnaires have not been preserved, and that, without access to those documents, he cannot construct an argument that jurors were improperly excluded.

■ Appellant's assertion that jury questionnaires used during voir dire must be preserved for the benefit of the defense so that such forms can be used after trial to prepare a *Batson* claim that was not previously raised is meritless. The appropriate time for making a *Batson* challenge was during voir dire. Appellant waited until the post-trial motion stage to raise this matter for the first time. Failure to object to the prosecutor's use of peremptory challenges during voir dire

results in a waiver of the issue. See *Commonwealth v. Jasper*, 531 Pa. 1, 9 n. 6, 610 A.2d 949, 953 n. 6 (1992) (affirming the rule that in capital cases "challenges to the selection of a jury can be waived by a failure to object appropriately."). Accord *Commonwealth v. Lewis*, 523 Pa. 466, 475, 567 A.2d 1376, 1381 (1989). Further, appellant has not provided a scintilla of proof that any improper exclusion of jurors in fact occurred. It was appellant's obligation to make a record that would permit review of a *Batson* challenge. *Commonwealth v. Spence*, 534 Pa. 233, 246–47, 627 A.2d 1176, 1182–83 (1993). The transcript of the voir dire, however, contains no references to the race of any of the prospective jurors. The racial composition of the jury that convicted appellant was established during a hearing on post-trial motions. Seven of the twelve jurors were black and five were white. Appellant is black. Nothing in the record indicates the race of any of the jurors who were not selected to serve, but it is clear that the majority of the chosen jury was of appellant's own race. Appellant has utterly failed to present a cognizable *Batson* claim.

■ Appellant's next contention concerns an outburst that occurred when the verdict of guilt as to murder of the first degree was announced. When the verdict was read, spectators in the courtroom cheered to show their approval. The court immediately stopped the outburst and admonished the spectators, stating, "Wait a minute, this is a courtroom, this is not a stadium. Now, I don't care if you're a policeman or the President of the United States, keep your mouth shut." Proceedings were then adjourned for the day. Appellant contends that the outburst biased the jury towards finding in favor of a sentence of death at the subsequent penalty hearing and that the court erred in denying his motion for a mistrial and his motion to direct a verdict in favor of a sentence of life imprisonment. We do not agree.

■■ As this court stated in *Commonwealth v. Werts*, 483 Pa. 222, 225–26, 395 A.2d 1316, 1318 (1978) (quoting *Commonwealth v. Craig*, 471 Pa. 310, 313, 370 A.2d 317, 319 (1977)),

" '[i]n the area of bystander misconduct, we have held that it is primarily within the trial judge's discretion to determine whether the defendant was prejudiced by the misconduct.' " Further, "[w]hether and to what extent relief is due from an incident such as an emotional outburst in the courtroom is within the discretion of the trial court, and unless the unavoidable effect of the incident is to deny the defendant a fair trial, there is no error." *Commonwealth v. Bracey*, 541 Pa. 322, 342, 662 A.2d 1062, 1072 (1995), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996). Prejudice that might result from a spectator outburst can be cured through a remedial instruction to the jury. *Commonwealth v. Savage*, 529 Pa. 108, 116, 602 A.2d 309, 312–13 (1992); *Commonwealth v. Marshall*, 523 Pa. 556, 569, 568 A.2d 590, 596 (1989).

It is asserted by appellant that the trial court failed to provide any curative instruction to the jury after the outburst, and that jurors might therefore have been encouraged to impose a sentence of death. This assertion is simply false. The record reveals that a thorough curative instruction was given by the court before the penalty hearing commenced. The penalty stage proceedings did not begin until the day after the outburst occurred. As those proceedings were about to begin, the court strongly warned spectators that no further outbursts would be tolerated. The jury was then brought in and the court issued the following curative instruction:

Ladies and gentlemen of the jury, when you delivered your verdict yesterday morning, an outburst occurred among some spectators. That outburst was disruptive and outrageous, it was unexpected and spontaneous and never should have occurred.

You have had yesterday afternoon and last night away from the courtroom scene, and as you return to begin the final phase of this trial, that is the penalty phase, I not only implore you, but I direct you not to consider that unfortunate, unexpected and inexcusable outburst in any way as you deliberate on the penalty.

You received instructions as to the law during the trial. You will receive instructions on the law which you are to

follow during your deliberations on the penalty. You must follow the law.

You are not to be influenced or intimidated in any way by the totally outrageous behavior of some spectators yesterday.

Given the facts that the outburst occurred only once, that it was promptly brought under control by the trial court, and that a thorough curative instruction was given to the jury before the proceedings continued, we are satisfied that any potential prejudice was abated. The trial court did not abuse its discretion, therefore, in denying defense motions for a mistrial and for a directed verdict in favor of a sentence of life imprisonment.

■ At the penalty hearing the prosecution sought the death penalty based on aggravating circumstances that the victim was a local law enforcement officer killed in the performance of his duties (42 Pa.C.S. § 9711(d)(1)) and that in the commission of the offense the defendant knowingly created a grave risk of death to another person (42 Pa.C.S. § 9711(d)(7)). The defense asserted two mitigating circumstances, namely that appellant had no significant history of prior criminal convictions (42 Pa.C.S. § 9711(e)(1)) and appellant's age at the time of the offense (42 Pa.C.S. § 9711(e)(4)).[1] The jury found that at least one aggravating circumstance was present, and that there were no mitigating circumstances. Accordingly, it returned a sentence of death.

The jury's findings as to the aggravating circumstances are supported by the evidence, given that appellant shot and killed one police officer and critically wounded another during the criminal episode. See 42 Pa.C.S. § 9711(h)(3)(ii) (appellate duty to review whether evidence supports the finding of an aggravating circumstance). Further, the record provides no basis for belief that the sentence was the "product of passion, prejudice or any other arbitrary factor," 42 Pa.C.S. § 9711(h)(3)(i). The sentence must, therefore, be affirmed.[2]

1. Appellant was nineteen years old at the time of the offense.

2. The jury's sentencing verdict as to the death penalty was rendered in February of 1995, but, due to various postponements and the death of

Judgment of sentence affirmed.[3]

Justice NIGRO files a concurring opinion.

Justice NEWMAN did not participate in the consideration or decision of this case.

NIGRO, Justice, concurring.

I agree with the majority that Appellant's *Batson* claim lacks merit, especially in light of the fact that the jury in Appellant's case consisted of seven black persons and five white persons. *See Commonwealth v. Clark,* 551 Pa. 258, 710 A.2d 31, 44 (1998)(Nigro, J., concurring)("[S]imple common sense dictates that we give the empanelling of a racially and gender balanced jury, and certainly one consisting of a majority of members of the racial or gender group alleged to have been purposefully excluded, substantial weight when determining whether an appellant's *Batson* claim has merit.") If the issue had been properly raised as an ineffectiveness claim, however, I would agree with Appellant to the extent that some type of documentation indicating the racial composition of the venirepersons should be available for appellate counsel's review.[1] Without access to this information, appellate counsel would have great difficulty in presenting a cognizable claim that trial counsel was ineffective for failing to raise a *Batson* challenge. *See Clark,* 551 Pa. 258, 710 A.2d 31, 41 (1998)(finding that trial counsel was not ineffective where the record did not establish a prima facie *Batson* claim.)

the trial judge, sentencing by the court did not occur until November of 1998. The proportionality of appellant's sentence is not subject to review, therefore, because sentence was imposed after June 25, 1997, to wit, the effective date of the repeal of 42 Pa.C.S. § 9711(h)(3)(iii), pursuant to which proportionality review was required. *Commonwealth v. Gribble,* 550 Pa. 62, 89–91, 703 A.2d 426, 439–40 (1997), *cert. denied,* 525 U.S. 1005, 119 S.Ct. 519, 142 L.Ed.2d 430 (1998).

3. The prothonotary of the Supreme Court is directed to transmit the complete record in this case to the Governor. 42 Pa.C.S. § 9711(i).

1. Appellant argues only that jury questionnaire ʋ ;iust be preserved for purposes of making a *Batson* claim on appeal. In my view, however, the type of documentation that is available to appellate counsel is irrelevant, so long as it can be used to determine the racial composition of the venirepersons.