J-S42013-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MIGUEL RODRIGUEZ | : | |
| | : | |
| Appellant | : | No. 786 EDA 2020 |

Appeal from the PCRA Order Entered January 24, 2020
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0003835-2014

BEFORE:  PANELLA, P.J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED NOVEMBER 13, 2020**

Miguel Rodriguez appeals from the January 24, 2020 order entered in the Northampton County Court of Common Pleas, which dismissed his first and timely petition filed pursuant to the Post Conviction Relief Act ("PCRA"), *see* 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing. On appeal, Rodriguez raises two claims of ineffectiveness of trial counsel. After our thorough review of the record, we find that Rodriguez has failed to demonstrate any examples of ineffectiveness and therefore affirm.

Preliminarily, we note that the factual history of this case is laid out extensively in Rodriguez's direct appeal. *See Commonwealth v. Rodriguez*, 174 A.3d 1130 (Pa. Super. 2017). Briefly, after a heated argument between several participants, shots were fired at a bar in Easton, Pennsylvania. The gunfire struck the victim, who died from his wounds, despite receiving aid from at least one police officer and the victim's subsequent transport to a local

hospital. Upon arriving at the scene, police found, among other items, a broken cell phone, a bag of marijuana, bullets, bullet fragments, and shell casings near the victim. The cell phone and marijuana bag featured Rodriguez's DNA.

The Commonwealth empaneled a grand jury. Rodriguez testified at the grand jury and stated: 1) he was at the bar, unarmed, on the night of the homicide with two friends; 2) he utilized two cell phones at the time, but gave one on that night to another person to use for drug transactions; 3) he never approached the location inside of the bar where the shooting actually occurred; and 4) he left the bar prior to hearing any gunshots and traveled to his girlfriend's house nearby.

At trial, one witness, a bouncer at the bar, testified that he saw Rodriguez brandish a gun. The bouncer stated that he heard three gunshots as he fled from the fracas. Additionally, a bartender who was working at the bar on the date of the shooting and who was also at one point a paramour of Rodriguez's friend provided her recollection of events. Her testimony followed having been stabbed ten times by Rodriguez's "acquaintances" several months after the homicide in this case, but prior to trial.

Ultimately, a jury found Rodriguez guilty of first-degree murder, and the trial court sentenced to a term of life imprisonment without the possibility of parole. After the trial court denied his post-sentence motions, Rodriguez appealed to our Court. We affirmed the trial court's judgment of sentence. *See id*. Rodriguez petitioned our Supreme Court for an allowance of appeal,

but his petition was denied on May 30, 2018. Rodriguez did not seek any further review with the United States Supreme Court.

Rodriguez now seeks PCRA relief. The PCRA court allowed for an evidentiary hearing on the issues raised in his petition. After the PCRA court's denial of his petition, Rodriguez filed a timely notice of appeal and, following prompting from the PCRA court pursuant to Pa.R.A.P. 1925(b), a concise statement of errors complained of on appeal. The PCRA court resultantly filed its Pa.R.A.P. 1925(a) opinion in support of its decision to deny Rodriguez's PCRA petition.

We summarize the two issues Rodriguez raises for our review:

1. Was trial counsel ineffective for failing to make a Pa.R.Crim.P. 403 or 404 objection to one of the witnesses' testimony when said testimony identified that Rodriguez's acquaintances stabbed her and killed her friend?

2. Was trial counsel ineffective for failing to object to grand jury testimony being entered into the record when Rodriguez did not receive a target letter and exercised his right to remain silent during his trial?

**See** Appellant's Brief, at 2.

When reviewing an order denying PCRA relief, "we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011). "The PCRA court's credibility determinations are binding on this Court when they are supported by the record. However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions." **Id**.

- 3 -

As both of Rodriguez's claims assert ineffective assistance of counsel, we begin from the premise that counsel is presumed to have rendered effective assistance. **See Commonwealth v. Rivera**, 10 A.3d 1276, 127 (Pa. Super. 2010). Moreover, Pennsylvania courts have, largely verbatim, adopted the test espoused by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 (1984). **See Commonwealth v. Pierce**, 527 A.2d 973, 976-77 (Pa. 1987). Therefore, to meet his burden of demonstrating ineffectiveness, Rodriguez must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." **Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003).

An ineffective assistance of counsel claim is fatally defective if the petitioner fails to satisfy *any* prong of the three-part test. **See Commonwealth v. Jones**, 811 A.2d 994, 1002 (Pa. 2002). To that point, as an appellate court, we "need not analyze the prongs of an ineffectiveness claim in any particular order." **Commonwealth v. Johnson**, 139 A.3d 1257, 1272 (Pa. 2016). Lastly, "counsel cannot be deemed ineffective for failing to raise a meritless claim." **Id**.

In his first issue, Rodriguez contends that testimony from one witness

violated several rules of evidence and that trial counsel was ineffective by not objecting to this testimony. Specifically, Rodriguez objects to testimony he believes constituted evidence of prior bad acts. He argues on appeal that such testimony should have been excluded pursuant to Pa.R.E. 403 (allowing the court to exclude relevant evidence if its value is outweighed by, among other things, unfair prejudice), Pa.R.E. 404(a)(1) (explaining that character or trait-based evidence cannot be admitted to prove that a person acted in accordance with either of those dispositions on any particular occasion), or Pa.R.E. 404(b)(1) (identifying that prior "bad acts" are not admissible to prove a person acted in accordance with that character). Rodriguez highlights Rule 404(b)(1)'s requirement that the Commonwealth provide reasonable notice of its intent to present prior bad act evidence either prior to trial, or, if it can show good cause, during trial. **See** Pa.R.E. 404(b)(3).

In the interest of fully getting to the heart of Rodriguez's averments, we have replicated the at-issue colloquy between the Commonwealth and the witness:

> **COMMONWEALTH**: Were you assaulted in June?
> **WITNESS**: I was stabbed 10 times.
> **COMMONWEALTH**: Who stabbed you?
> **WITNESS:** Acquaintances of [Rodriguez].
> **COMMONWEALTH**: Do you know did [witness's former paramour] have anything to do with the stabbing?
> **WITNESS:** Of course he had something to do with it.
> **COMMONWEALTH**: But after that, did you start opening up even more about what you had observed [of the homicide in Northampton County]?
> **WITNESS:** Yes, because then they killed my friend …so I wasn't like–it was just like, when is enough[?]

**COMMONWEALTH**: And that was in New York?
**WITNESS**: Yeah.
**COMMONWEALTH**: But you're not saying [Rodriguez] did that?
**WITNESS**: No. No. I'm saying his acquaintances did that, just like his acquaintances did that to me.

N.T., 2/3/16, at 158-61.

Rodriguez avers that the witness's testimony "was improper introduction of prior bad acts." Appellant's Brief, at 8. Rodriguez interprets the above text as "essentially align[ing] Rodriguez with another homicide" and "plant[ing] in the minds of the jurors that Rodriguez is the type of person to have a witness stabbed 10 times." *Id*. Rodriguez claims the Commonwealth failed to provide 404(b)(3) notice of its intent to introduce this prior bad act evidence. *See id*.

Other than providing a singular citation to and recitation of Pa.R.E. 403, Rodriguez fails to discuss why the testimony he identifies should have been excluded as irrelevant or unfairly prejudicial. In the absence of any support, such a claim necessarily fails. *See Commonwealth v. Williams*, 732 A.2d 1167, 1175 (Pa. 1999) (explaining "the unavailability of relief based upon undeveloped claims for which insufficient arguments are presented on appeal").

Regarding his 404 assertions, Rodriguez's argument hinges on whether the prior bad act testimony at issue impugned Rodriguez's character. We see no arguable merit to this claim. The witness expressly disavowed Rodriguez's involvement with her being stabbed or the murder of the witness's friend. Accordingly, there is no predicate prior bad act or character evidence to

consider in that evidence's admissibility.

Simply put, Rule 404 does not apply. First, the highlighted testimony does not establish that Rodriguez, himself, committed any prior bad acts. Second, the *only* potential "character evidence" identified is Rodriguez's acquiescence to "acquaintance status" with these other individuals who apparently stabbed the witness and killed the witness's friend. However, Rodriguez provides no support to establish that merely being an acquaintance with another who commits bad acts somehow imputes bad act evidence on oneself. Moreover, the testimony does not indicate that Rodriguez even had any knowledge of these bad acts. Therefore, any objection premised on Rule 404 would have failed, and it was not ineffective assistance of counsel to not pursue such an objection.

Next, Rodriguez maintains that it was a due process violation under the Fifth and Fourteenth Amendments of the United States Constitution when the Commonwealth read grand jury testimony into the record at trial. Rodriguez takes issue with not only the introduction of his own statements to the grand jury, asserting that such testimony violated his right against self-incrimination, but also contests the questions that the prosecutor asked him, which "repeatedly contained highly incriminating, limitless layers of hearsay." Appellant's Brief, at 11.

We find that there has been no violation of his right against self-incrimination. Although he exercised his right to remain silent during his trial,

that action does not immunize him from the impacts of his own past testimony. Rodriguez, who was represented by counsel throughout the entire grand jury proceeding, does not challenge whether he was apprised of his right against compulsory self-incrimination. Absent some indication that his testimony was not voluntary or that the court did not fully identify his rights, we are constrained to conclude that his grand jury testimony was derived from his own volition. Therefore, "[w]hen [Rodriguez] took the stand in the prior proceedings without asserting his privilege against self-incrimination, he thereby waived the privilege as to the testimony given, and that testimony could be used against him in a subsequent trial." **Commonwealth v. Ferguson**, 516 A.2d 1200, 1202 (Pa. Super. 1986).

Next, Rodriguez points to certain questions the prosecutor asked him in front of the grand jury. He proclaims that, because these questions identify non-testifying individuals and set forth their statements, he was denied his right to cross examine the witnesses against him. He contends the questions were inherently testimonial in nature and prohibited unless a named witness was unavailable. **See Commonwealth v. Ramtahal**, 33 A.3d 602, 610 n.5 (Pa. 2011); **see also** Pa.R.E. 804(b)(1). For example, one of the questions asked why Rodriguez's girlfriend's mother would say that he was not at her home at the time of the shooting. **See** N.T., 2/4/16, at 75.

"Hearsay is an out-of-court statement offered to prove the truth of the matter it asserts." **In re Shahan**, 631 A.2d 1298, 1304 (Pa. Super. 1993).

Through our analysis of the questions Rodriguez has identified we ascertain that the questions, themselves, were not being asked in order to prove any of the "truth" arguably advanced within those out-of-court "statements." Instead, the questions were contextually necessary for the jury to fully understand Rodriguez's answers, which, in large part, formed the basis of his alibi or were at least congruent with his alibi asserted at trial. Accordingly, because the statements were not admitted for their truth, but rather their effect on the listener – in this case, Rodriguez, as he testified before the grand jury – the questions were not hearsay. *See id*. Counsel, therefore, cannot be faulted for not objecting to a claim that lacked arguable merit.

Furthermore, even if those questions were erroneously entered into the record, Rodriguez has failed to demonstrate that he suffered from any resulting prejudice. Rodriguez merely states that prejudice ensued because "no other witness testified about whether Rodriguez was at his girlfriend's home or whether or not he left his phone behind with someone else when he decided to leave the bar." Appellant's Brief, at 15. Rodriguez then proceeds to hollowly assert that, besides his own grand jury testimony, the only other existent testimony was that of "two personally motivated witnesses." *Id*. However, given that Rodriguez has provided no reason to effectively strike the testimony of the two witnesses *who actually saw him at the bar contemporaneous to the shooting*, we see no reason to conclude that there is a reasonable probability that the outcome of the proceedings would have been

different. **See Commonwealth v. Landis**, 89 A.3d 694, 699 (Pa. Super. 2014) (indicating that the trier of fact is free to believe all, part, or none of the evidence when passing upon the credibility of witnesses).

As neither of Rodriguez's issues constitute ineffective assistance of counsel, we find that PCRA relief is unwarranted and affirm the order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/20